IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| INTERNATIONAL MOTOR CONTEST ASSOCIATION, INC., an Iowa corporation, | | |
| Plaintiff, | | No. C 05-3080-MWB |
| vs. | | MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND MOTION TO STRIKE AFFIRMATIVE DEFENSES, and DEFENDANTS' MOTIONS TO STRIKE PORTIONS OF PLAINTIFF'S MOTIONS AND REPLY BRIEF |
| TODD ALLEN STALEY, individually and d/b/a UNITED STATES RACING ASSOCIATION, and d/b/a UNITED STATES MODIFIED TOURING SERIES; and UNITED STATES MODIFIED TOURING SERIES, INC., an Iowa corporation, | | |
| Defendants. | | |

_____

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. Allegations In The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B. The Defendants' Challenged Defenses And Counterclaims . . . . . . . . . 4
    C. The Motions Before The Court . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A. The Defendants' Motions To Strike Improper References . . . . . . . . . . 8
        1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . 8

| | | | |
|---|---|---|---|
| | 2. | Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| | 3. | Application of the standards . . . . . . . . . . . . . . . . . . . . . | 11 |
| B. | *IMCA's Motion To Strike Affirmative Defenses* . . . . . . . . . . . . . . . . | 14 |
| | 1. | Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . | 14 |
| | 2. | Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| | 3. | Application of the standards . . . . . . . . . . . . . . . . . . . . | 19 |
| | a. | *Does the* Noerr-Pennington *doctrine bar the challenged affirmative defenses?* . . . . . . . . . . . . . . | 19 |
| | b. | *Are "misuse of copyright" and "unclean hands" defenses to copyright infringement actions?* . . . . . . | 21 |
| | | i. *The "misuse of copyright" defense* . . . . . . . . | 21 |
| | | ii. *The "unclean hands" defense* . . . . . . . . . . . | 25 |
| | c. | *Has either defense been adequately pleaded?* . . . . . . | 27 |
| | | i. *The "misuse" defense as pleaded* . . . . . . . . . | 27 |
| | | ii *The "unclean hands" defense as pleaded* . . . . . | 33 |
| | d. | *Specific allegations* . . . . . . . . . . . . . . . . . . . . . . . | 35 |
| C. | *IMCA's Motion To Dismiss Counterclaims* . . . . . . . . . . . . . . . . . . . | 36 |
| | 1. | Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . | 37 |
| | 2. | Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . | 39 |
| | a. | *Abuse of process under Iowa law* . . . . . . . . . . . . . . | 42 |
| | b. | *Sufficiency of the defendants' pleadings* . . . . . . . . . | 45 |
| | c. | *Does the* Noerr-Pennington *doctrine stand as an insuperable bar?* . . . . . . . . . . . . . . . . . . . . . . . . | 47 |
| III. | *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 51 |

The motions now before the court in this case ask the court to decide what defenses and counterclaims the defendants can assert to the plaintiff's claims of copyright infringement and what allegations the court can properly consider in deciding that question. One of the principal issues is whether the *Noerr-Pennington* doctrine bars

the defendants' affirmative defenses of "misuse" of copyright and "unclean hands" and their counterclaims of abuse of process.

## I. INTRODUCTION

### A. Allegations In The Complaint

In a Complaint filed December 30, 2005, plaintiff International Motor Contest Association, Inc. (IMCA), alleges that it is an Iowa corporation, with its principal place of business in Vinton, Benton County, Iowa. IMCA alleges that it was organized in 1915 and, therefore, is the oldest sanctioning body for automobile racing in the United States. IMCA alleges that its franchisees operate in the United States and Canada as promoters to stage and conduct automobile racing events under the rules and regulations of the IMCA in which only IMCA licensed drivers may compete. IMCA alleges, further, that it is the holder of numerous copyrights for its "Official Rules."[1]

IMCA alleges that individual defendant Todd Allen Staley, a resident of Webster City, Hamilton County, Iowa, is also in the business of promoting racing events. IMCA alleges that Staley is or was, at times material to this litigation, doing business as United States Racing Association (USRA) and as United States Modified Touring Series (USMTS). IMCA alleges, further, that corporate defendant United States Modified Touring Series, Inc. (USMTS, Inc.), is an Iowa corporation, which was administratively

---

[1]IMCA alleges that is the holder of copyrights for its "Official Rules" for 1990 through and including 2005, and cites copyright certifications TX 6-1/1-598; TX 6-246-000; TX 6-246-001; TX 6-246-002; TX 6-246-003; TX 6-245-997; TX 6-245-998; and TX 245-999. Although IMCA asserts that these copyright certifications are "incorporated by reference" into its Complaint "as if set forth [therein] in full," *see* Complaint, ¶ 19, IMCA has not attached a single copyright certification or any copy of its "Official Rules" to its Complaint.

dissolved on August 5, 2002, but reinstated on April 23, 2004, and that Staley is its president and corporate agent. IMCA alleges that Staley did business as USMTS, Inc., during the period that the corporation was administratively dissolved. IMCA alleges that, at all times material to its Complaint, Staley was promoting racing events and soliciting promoters as part of the USMTS race series and soliciting promoters and race track operators to agree to promote and conduct weekly races sanctioned under the USRA rules.

IMCA alleges that the USRA rules, however, were copied from IMCA's rules and regulations, that the defendants represented that the IMCA rules were their own, and that the defendants reproduced, published, and used the IMCA rules, either unchanged or with minor changes rendering them strikingly and substantially similar to IMCA's rules, as the rules of the USRA for the defendants' financial gain. IMCA contends that such infringement of its copyrighted rules continued despite two notices to cease and desist such conduct. IMCA alleges that it has sustained and will continue to sustain damages and irreparable harm from the loss in value of its exclusive rights under its copyrights. Therefore, in a single claim for relief from copyright infringement, IMCA prays for judgment against the defendants for actual and statutory damages; temporary and permanent injunctions; an accounting of all uses, reproductions, copies, memorializations, publications, and disseminations of copyrighted works of IMCA; reasonable attorney fees and the costs of this suit; and such other statutory, legal, and equitable relief as the court deems just and proper.

### B. The Defendants' Challenged Defenses And Counterclaims

In an Answer and Counterclaims filed March 22, 2006, the defendants deny IMCA's copyright infringement claim. The defendants assert, *inter alia*, that rules of a contest cannot be copyrighted. In addition, they assert several affirmative defenses, of

4

which the third and fourth are of interest here, because IMCA has challenged them, as well as two Counterclaims for "abuse of process," one by Staley against IMCA, and one by USMTS, Inc., against IMCA, which IMCA has also challenged. The court will consider these challenged affirmative defenses and Counterclaims in more detail.

In their Third Affirmative Defense, the defendants allege, in essence, "[t]hat the complaint of the Plaintiff I.M.C.A. has been brought not to protect any claimed copyright it owns or claims to own, but [to] harass, oppress and damage the Defendants and to force the Defendants out of business or to coerce the Defendants into selling [their] businesses to the Plaintiff, I.M.C.A." Defendants' Answer, Third Affirmative Defense, ¶ 5. The allegations of improper conduct upon which this defense is based include the following: threatening defendants with a lawsuit for rights far beyond the limited monopoly granted by IMCA's copyrights amounting to abuse and misuse of a copyright; asserting claims in this lawsuit as efforts to eliminate the defendants as competitors and to increase IMCA's profits on contracts with suppliers, manufacturers, and distributors of racing tires and other racing parts; claiming that IMCA's copyright prohibits anyone from making reference to parts required under IMCA's rules, including demands that the defendants cease using the IMCA logo or acronym or making any unauthorized use of or reference to IMCA approved products, which demands the defendants contend were made with the purpose and intent to keep any racer who purchased and used IMCA mandated products from racing in USMTS events; using its baseless lawsuit to increase its market share in the stock car race sanctioning business by burdening the defendants with the costs of defense; and fixing prices for racing tires its members are required to buy. *See id.* at ¶¶ 6-11. The defendants contend that the abuse and misuse of any claimed copyright bars any recovery or relief IMCA seeks on its copyright infringement claim.

In their Fourth Affirmative Defense, the defendants assert "[t]hat if the Plaintiff I.M.C.A. is found to have a valid copyright on rules, the Plaintiff I.M.C.A.'s copyright does not extend to keeping others from using those rules, i.e. holding racing events that utilize the rules [in] which Plaintiff I.M.C.A. claims to hold a copyright certificate." Defendants' Answer, Fourth Affirmative Defense, ¶ 1. Thus, the defendants assert that IMCA has "unclean hands" and is attempting to use legal proceedings to protect an improper extension of its claimed copyright and that a court in equity should withhold its aid to IMCA, because IMCA's actions are contrary to the public interest. *Id.* at ¶¶ 3-4. The defendants again assert that the efforts of IMCA that are contrary to the public interest include attempting to control 60-70 percent of a specific racing tire market and price fixing in violation of IOWA CODE § 553.5.

In their nearly identical Counterclaims, Staley and USMTS, Inc., each assert—apparently on the basis of some thirty-three paragraphs of allegations of jurisdiction and venue, identification of the parties, and factual background—that IMCA has engaged in "abuse of process."[2] The portions of their Counterclaims specifically identified as "Counts" allege that, on or about December 30, 2005, the date that IMCA filed this lawsuit, IMCA "intentionally used the federal court process to oppress, harass, and cause an undue burden of expense on the Counterclaim Plaintiff" in question. Defendant's Answer, Counterclaim of Todd Staley, ¶ 34 & Counterclaim of USMTS, Inc., ¶ 34. The counterclaimants assert, further, that IMCA has used the legal process primarily to eliminate or harm its business competitor, USMTS, Inc., and not to obtain temporary or

---

[2]IMCA points out that the defendants never incorporate their various factual allegations into the Counts of their Counterclaims. The defendants respond that the purpose of the factual allegations and the relationship of those factual allegations to their Counterclaims are obvious.

permanent injunctive relief or monetary damages and that, as a result, the counterclaimants have suffered damages, including emotional distress to Staley, and unnecessary attorney fees and lost time for both counterclaimants from defending against IMCA's lawsuit. *Id.* at ¶¶ 35-36. As relief, the counterclaimants pray for actual and punitive damages, as well as costs of their action.

### C. The Motions Before The Court

Instead of filing a reply to the Counterclaims filed by Staley and UMSTS, Inc., on April 15, 2006, IMCA filed a Motion To Dismiss And Motion To Strike (docket no. 9) seeking an order dismissing the Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and striking the defendants' third and fourth affirmative defenses or portions thereof pursuant to Rule 12(f). On April 27, 2006, the defendants filed both a Motion To Strike Improper References In Plaintiff's Motions (docket no. 10) and a Resistance To Plaintiff's Motions To Strike And Dismiss (docket no. 11). On May 7, 2006, IMCA filed a reply in further support of its motions to dismiss and to strike (docket no. 12), which prompted the defendants to file another Motion To Strike Improper References In Plaintiff's Reply Brief (docket no. 13) on May 9, 2006. IMCA filed its resistance to the defendants' first motion to strike improper references on May 15, 2006 (docket no. 14), and a response to the defendants' second motion to strike improper reference on May 27, 2006, including a motion to strike or deny the defendants' motion as an improper surrebuttal or surreply. (docket no. 16).

IMCA requested oral arguments on its original Motion To Dismiss And Motion To Strike, and the court deemed it likely that oral arguments would be of benefit on the defendants' motions to strike improper references, as well as on IMCA's motions. Therefore, the court heard oral arguments on all pending motions on June 13, 2006.

Plaintiff IMCA was represented by Richard A. Bartolmei of Bartolomei & Lange, P.L.C., in Des Moines, Iowa. Defendants Staley and USMTS, Inc., were represented by Robert A. Nading II of the Nading Law Firm in Ankeny, Iowa.

The pending motions are now fully submitted, and the court turns to their disposition. The court finds that it is most logical to begin its analysis with the defendants's motions to strike, which assert that IMCA is relying on improper allegations and information, not found in the pleadings, to support its motions to strike and to dismiss, because the defendants' motions relate to what the court may consider in its disposition of IMCA's motions.

## II. ANALYSIS

### A. The Defendants' Motions To Strike Improper References

As noted above, on April 27, 2006, the defendants filed a Motion To Strike Improper References In Plaintiff's Motions (docket no. 10) and on May 9, 2006, they filed a Motion To Strike Improper References In Plaintiff's Reply Brief (docket no. 13). IMCA filed its resistance to the defendants' first motion to strike improper references on May 15, 2006 (docket no. 14), and a resistance to the defendants' second motion to strike improper references, including a motion to strike the defendants' motion as an improper surrebuttal or surreply, on May 27, 2006 (docket no. 16).

#### 1. Arguments of the parties

The defendants' arguments in favor of their two motions to strike are essentially the same: They contend that IMCA is relying on matters not contained in the pleadings as grounds for dismissal of their affirmative defenses and Counterclaims, contrary to Rule 12(b). They argue that the court should disregard such improper references, because it would be premature to convert IMCA's motion to dismiss into a motion for summary

judgment, as would be required if the court were to consider matters outside of the pleadings. Although the defendants do not identify with any specificity what improper references are purportedly contained in IMCA's motions, they do identify one such allegedly improper reference in IMCA's reply brief, that being IMCA's assertion that the defendants' Counterclaim is an attempt to set the stage for discovery in support of a purported antitrust claim arising out of IMCA's alleged activities with non-party Racing Tires of America (RTA), a maker of racing tires.[3] The defendants contend that IMCA is using such unpleaded allegations as the basis for seeking dismissal of defenses and Counterclaims asserting misuse of copyrights and sham litigation to avoid having to answer the defendants' contentions and to avoid discovery into and scrutiny of IMCA's improper actions.

In response to the defendants' first motion to strike improper references, IMCA points out that the defendants did not identify any specific allegations that the defendants believe constitute references to matters outside of the record or any specific allegations that the court should strike. Instead, IMCA contends that it is the defendants who have injected improper matters into the pleadings in this case, which IMCA has been forced to challenge in its own motions to dismiss and to strike. IMCA also asserts that the defendants fail to cite any authority requiring the court to strike supposedly improper references, where Rule 12(b) provides only for conversion of a Rule 12(b)(6) motion into a motion for summary judgment when matters outside of the pleadings are considered.

In their response to the defendants' second motion to strike, the one seeking to strike improper references in IMCA's reply brief, IMCA not only resists the defendants'

---

[3]The defendants explain that IMCA recently severed a long-standing contractual relationship with RTA and that they now have a contractual relationship with RTA.

motion but moves to strike or deny it as an improper surrebuttal or surreply. IMCA asserts that no Federal Rule of Civil Procedure or local rule of this district permits a surrebuttal or surreply to a reply brief, and that the defendants have already resisted IMCA's motion on the merits. IMCA also asserts that the defendants' second motion to strike looks much like the defendants' first motion to strike, although it does identify one sentence in IMCA's reply that the defendants assert should be stricken. IMCA also asserts that the defendants' motions to strike reflect inconsistent positions about arguments based on reasonable inferences from facts pleaded, suggesting that the court should allow such arguments when made by the defendants, but exclude them when made by IMCA, which IMCA argues is both incorrect and unfair.

### 2. *Applicable standards*

The defendants' motions to strike are based primarily on the portion of Rule 12(b), which provides as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(b); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 & n. 3 (8th Cir. 1996). Although Rule 12(b) generally prohibits consideration of matters outside of the pleadings on a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment. For example, the court may consider documents outside of the pleadings where "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties

do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc.,* *Retirement Plan*, 187 F.3d 970, 972 n.3 (8th Cir. 1999) (citing *Silver v. H & R Block,* *Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)). Nor is a motion to dismiss automatically converted into one for summary judgment "simply because one party submits additional matters in support of or opposition to the motion," because "[s]ome materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss." *Missouri ex rel. Nixon v. Coeur D'Alene* *Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999), *cert. denied*, 527 U.S. 1039 (1999). Finally, even where matters outside of the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food* *and Commercial Workers Int'l Union, AFL-CIO*, 5 F.3d 297, 302 n.2 (8th Cir. 1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.*

### 3. *Application of the standards*

Taking the last issue raised by the parties first, the court agrees that there is no specific provision in either the Federal Rules of Civil Procedure or the local rules for a surreply or surrebuttal brief, but neither is there any prohibition on the consideration of a surreply or surrebuttal, in the court's discretion. More to the point, however, the court does not agree with IMCA that the defendants' motions to strike improper references are only surreplies or surrebuttals. Rather, whatever the merits of those motions to strike might be, they are properly (if somewhat vaguely) targeted at material that the defendants contend cannot be considered on a motion to dismiss. *See* FED. R. CIV. P. 12(b) (matters outside of the pleadings cannot be considered on a motion to dismiss for failure to state a claim without converting the motion into a motion for summary judgment). Therefore, the

court will deny IMCA's motion to strike the defendants' second motion to strike improper references as improper surrebuttal or surreply.

Turning to the merits of the defendants' motions to strike improper references, while the court might be able to consider the copyright certifications upon which IMCA's claim is based, which presumably would be relevant to IMCA's motion to dismiss the defendants' Counterclaims and to strike the defendants' affirmative defenses, the copyright certifications were not submitted. *See Jenisio*, 187 F.3d at 972 n.3 (the court may consider documents outside of the pleadings on a Rule 12(b)(6) motion to dismiss, if the documents are submitted and the parties do not dispute their contents). Although IMCA asserted at oral arguments that the court could consider its copyright certifications, even though they were not attached to IMCA's Complaint, by taking judicial notice of the certifications as matters of public record, the court does not necessarily agree that it can consider matters of public record until and unless they are submitted by a party in support of or opposition to a motion to dismiss. *See Coeur D'Alene Tribe*, 164 F.3d at 1107 (the court may also consider on a Rule 12(b)(6) motion documents that are public records when they are submitted in support of or opposition to a motion to dismiss). Indeed, the defendants' challenges seem to be leveled primarily at allegations found only in the plaintiff's *briefs*, unsupported by any pleadings or documentary evidence submitted with the complaint or any other filing. Such allegations, if any, would clearly fall outside the realm of matters that the court can consider on a Rule 12(b)(6) motion to dismiss. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the *factual allegations of the complaint* as true and construing them in the light most favorable to [the non-movant].") (emphasis added).

However, the court finds that it would be premature to convert IMCA's Rule 12(b)(6) motion to dismiss Counterclaims into a Rule 56 motion for summary judgment, where the matters purportedly outside of the pleadings are poorly identified, and any such matters are unsubstantiated by any factual submissions of the parties, no discovery has been conducted, and the defendants assert that matters outside of the pleadings, as well as matters specifically alleged in the pleadings, are hotly contested. *See* FED. R. CIV. P. 12(b) ("[W]here matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"); *see also Buck*, 75 F.3d at 1288 & n. 3. Rather, under the circumstances, the court deems it appropriate to consider only allegations in the pleadings, and to disregard matters outside of the pleadings, in the court's disposition of IMCA's motions to dismiss or strike. *See Skyberg*, 5 F.3d at 302 n.2 ("[W]here the district court's order makes clear that the judge ruled only on the motion to dismiss," the appellate court will "treat the case as being in that posture."). To that extent, the defendants' motions to strike improper references are granted.

Again, because the defendants have only poorly identified the matters outside of the pleadings that IMCA has purportedly referred to in support of its motion and reply brief, if they have identified them at all, the court will have to sift through IMCA's arguments to determine which ones are premised on matters not referenced in the pleadings and, therefore, must be disregarded.

### B. IMCA's Motion To Strike Affirmative Defenses

The court turns, next, to that portion of IMCA's April 15, 2006, motion seeking an order striking the defendants' third and fourth affirmative defenses pursuant to Rule 12(f). IMCA seeks to strike the third affirmative defense in its entirety, or failing that, to strike paragraphs 8 through 13 of that defense, and to strike the fourth affirmative defense in its entirety, or failing that, to strike paragraph 14 of that defense. The defendants have resisted this part of IMCA's motion.

### 1. Arguments of the parties

IMCA contends that the defendants' third affirmative defense is insufficient, because a defense of abuse or misuse of a copyright cannot be based on allegations of antitrust violations or price fixing as a matter of law. IMCA contends, further, that a copyright holder who files suit to protect its copyrights is immune to such a defense or claim under the *Noerr-Pennington* doctrine. IMCA also asserts that the mere threat to bring a copyright infringement action, seeking only remedies available for copyright infringement, cannot be the basis for a defense of abuse or misuse of a copyright. IMCA contends that the defendants have not adequately alleged that IMCA has misused or abused its copyrights to impede the defendants from creating and disseminating any new, non-infringing copyrighted works or that the filing of this lawsuit was for such an improper purpose, so that the defendants have simply failed to state a defense of misuse or abuse of copyright.

Turning to more specific portions of the third affirmative defense, IMCA contends that paragraph 8 of the third affirmative defense alleges that, in a cease and desist letter, IMCA improperly claimed that its copyrights prevented the defendants from making unauthorized use of the IMCA logo and acronym. IMCA contends that this paragraph should be stricken, because the portion of the cease and desist letter referred to involved IMCA's assertion of its *trademark rights*, which are not at issue in this suit, in which

14

IMCA is only asserting claims concerning infringement of its *copyrights*. Thus, IMCA contends that this paragraph of the defense is impertinent and immaterial and mischararacterizes IMCA's claim in this lawsuit. IMCA adds that the defendants' allegation of the purpose for IMCA's assertion of its trademark rights is wholly without factual basis and is illogical, impertinent, scandalous, meaningless, and prejudicial.

IMCA also contends that paragraphs 9 through 13 of the third affirmative defense improperly assert a defense based on a prior business and contractual relationship between IMCA and RTA to which the defendants were not a party as well as other purported antitrust and price-fixing violations. None of the allegations in these paragraphs, IMCA contends, have anything to do with copyright infringement or constitute cognizable defenses to copyright infringement, and in any event, all are barred by the *Noerr-Pennington* doctrine, which IMCA contends immunizes copyright infringement actions from claims of antitrust violations. IMCA also contends that, as pleaded, these allegations fail to state any cognizable defense, because the factual allegations would not give rise to any antitrust or price-fixing violation. Finally, IMCA contends that this affirmative defense fails, because the defendants have nowhere alleged that IMCA's copyright infringement action is a "sham," nor have they alleged any adequate basis for asserting that the action is a "sham," so that the defendants cannot exploit an exception to the *Noerr-Pennington* doctrine.

IMCA contends that the defendants' fourth affirmative defense, likewise, fails to state a legally cognizable and sufficient defense, this time because the defendants have made no factual allegations sufficient to demonstrate "unclean hands," nor have they identified any legal basis for their assertion that "unclean hands" is an equitable defense to a copyright infringement action. Moreover, IMCA asserts that this defense alleges no factual basis for a claim that IMCA has improperly tried to expand its copyrights beyond

their legitimate scope in violation of the public interest. IMCA reiterates that the *Noerr-Pennington* doctrine bars this affirmative defense. Thus, IMCA contends that this defense should likewise be stricken as immaterial and impertinent and not responsive to the issues involved in this lawsuit.

In response, the defendants argue that abuse or misuse of a copyright based on antitrust violations or other anticompetitive conduct is a valid defense to a copyright infringement action. They assert, further, that the *Noerr-Pennington* doctrine bars only certain *claims*, but not affirmative defenses. Thus, they contend that IMCA has cited no good authority for striking their third and fourth affirmative defenses. They also argue that, contrary to IMCA's contentions, they have alleged sufficient facts to give rise to affirmative defenses based on abuse or misuse of copyrights, because they have alleged facts showing that IMCA attempted to expand its copyright improperly in violation of public policy. They cite as examples allegations that IMCA has used its copyrights to harass the defendants and to burden their business, to fix prices on racing products, to obtain an unfair market share of certain racing products, and to prevent other entities from promoting races involving comparable rules or equipment. They contend that their third affirmative defense relates to the improper expansion of IMCA's copyrights nationally, while the fourth affirmative defense relates to such improper conduct in violation of Iowa law. Those pleadings, they contend, should be permitted to stand unless and until IMCA can show that there is no factual basis for them, for example, on a motion for summary judgment, but that a motion to strike such defenses on the pleadings is premature. The defendants also argue that they have adequately pleaded facts showing such improper conduct by IMCA that the court should decline to exercise its equitable powers on IMCA's behalf.

In the portion of its reply relating to its motion to strike the affirmative defenses, IMCA contends that the defendants have failed to allege any nexus between the copyrights at issue and the alleged antitrust violations, and that, by their own pleadings, the defendants' right to assert an equitable defense of abuse or misuse of copyright ended before this action was filed. Thus, IMCA asserts that there is no allegation of an attempt to expand its copyrights beyond their lawful parameters. Specifically, IMCA reiterates its contention that there are no allegations that its assertion of its copyrights somehow impedes the defendants from developing their own rules for sanctioning automobile races, so there is no allegation of violation of a relevant public policy. IMCA also contends that there is no Eighth Circuit case clearly adopting a "misuse of copyright" defense. Further, IMCA points out that, by the defendants' own admission, the contract between RTA and IMCA ended before this action was filed, so that even assuming that contract somehow constituted an antitrust violation or other anticompetitive action relating to IMCA's copyrights, which IMCA denies, the alleged misuse of the copyright ended before this action began, and thus, cannot be used as an equitable defense to the current enforcement of IMCA's copyrights.

2.  *Applicable standards*

Rule 12 of the Federal Rules of Civil Procedure provides for a motion to strike, as follows:

> (f) Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FED. R. CIV. P. 12(f). In ruling on a Rule 12(f) motion, the court "enjoys liberal discretion," and its ruling is reviewed only for abuse of that discretion. *See Nationwide Ins. Co. v. Central Missouri Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001); *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 863-64 n.3 (8th Cir. 1997)). The rule embodies this discretion, because it is cast in permissive terms ("the court may order . . .") rather than mandatory terms. FED. R. CIV. P. 12(f); *see also Stanbury*, 221 F.3d at 1063 ("Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys 'liberal discretion' thereunder."). The Eighth Circuit Court of Appeals has also recognized that, "[d]espite this broad discretion . . . striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted .'" *Stanbury*, 221 F.3d at 1063 (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977), in turn citing 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1380 at 783 (1969)).

Applying these standards, the Eighth Circuit Court of Appeals has ruled that even matters that are not "strictly relevant" to the principal claim at issue should not necessarily be stricken, if they provide "important context and background" to claims asserted or are relevant to some object of the pleader's suit. *Id.* Similarly, the court should not strike a defense as "legally insufficient" if the defense is either "'sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear.'" *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (quoting 2A MOORE'S FEDERAL PRACTICE ¶ 12.21 at 2437 (2d ed. 1975)). Therefore, the Eighth Circuit Court of Appeals has been "reluctant to rule" on the sufficiency of a defense that presents either legal or factual uncertainty "without the benefit of a full record." *Id.* On the other hand, the court

may properly strike a defense under Rule 12(f) as "legally insufficient," if it is foreclosed by prior controlling decisions or statutes. *See United States v. Dico, Inc.*, 266 F.3d 864, 879-80 (8th Cir. 2001) (the district court properly struck a due process affirmative defense on the ground that it was foreclosed by a prior decision of the Eighth Circuit Court of Appeals and a subsequent decision of the United States Supreme Court had not undermined the appellate court's decision, as the defendant argued); *United States v. Winnebago Tribe of Nebraska*, 542 F.2d 1002, 1007 (8th Cir. 1976) (a defense was "clearly insufficient" where it was contrary to provisions of the Flood Control Act of 1944).

      3.    *Application of the standards*

          a.    *Does the* Noerr-Pennington *doctrine bar the challenged affirmative defenses?*

IMCA's over-arching challenge to the defendants' third and fourth affirmative defenses is that those defenses are barred by the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine provides immunity from tort liability for the act of filing a lawsuit, based on the First Amendment rights to free speech and to petition the court. *See, e.g., Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 (8th Cir. 1999) (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)). Originally, at least, the doctrine exempted from *antitrust laws* certain petitioning of the courts and administrative agencies that resulted in anti-competitive effects. *South Dakota v. Kansas City Southern Indus., Inc.*, 880 F.2d 40, 50-51 n.23 (8th Cir. 1989) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)). However, the doctrine has since been applied to provide immunity from other kinds of claims, besides antitrust violations. *Id.* at 50-51 & n.24; *Hufsmith v. Weaver*, 817 F.2d 455, 457-58 (8th Cir. 1987) (noting that the court had held that the doctrine is applicable to tort claims, not just antitrust claims).

The first fundamental flaw in IMCA's assertion that the *Noerr-Pennington* doctrine bars the challenged affirmative defenses is that the doctrine "protects a defendant from liability but not from suit," and the Eighth Circuit Court of Appeals has "never characterized it as immunity from standing trial." *Hinshaw v. Smith*, 436 F.3d 997, 1003 (8th Cir. 2006) (noting that this interpretation of the doctrine is in accord with the view of the "sister circuits"); *Porous Media Corp.*, 186 F.3d at 1080 n.4 (("[T]he First Amendment generally immunizes the act of filing a lawsuit from tort liability under the *Noerr-Pennington* doctrine."). The defendants' challenged affirmative defenses do not attempt to impose liability on IMCA for anything; rather, they attempt to raise certain kinds of inequitable conduct by IMCA as shields to IMCA's copyright infringement claims. Thus, these affirmative defenses simply do not run afoul of *Noerr-Pennington* immunity from *liability*.

The second fundamental flaw in IMCA's assertion that the *Noerr-Pennington* doctrine bars the affirmative defenses challenged here is that IMCA has misconstrued the conduct that is immunized by the doctrine. The *Noerr-Pennington* doctrine immunizes from antitrust or other tort liability only the *filing of a lawsuit* to protect a claimant's rights, or a similar action that constitutes petitioning of the government for redress. *Hinshaw*, 436 F.3d at 1003 (the *Noerr-Pennington* doctrine "is a defense to liability premised on the defendant's actions of exercising his own private rights to free speech and to petition the government."). The *Noerr-Pennington* doctrine does not, however, bar defenses (or even claims) in which *the filing of the lawsuit*, or other action in petitioning the government, is not identified as the inequitable or wrongful conduct. Here, the defendants' third and fourth affirmative defenses are not based, or are not solely based, on allegations that IMCA's *filing of this lawsuit* was wrongful. Thus, the *Noerr-*

*Pennington* doctrine does not bar these defenses to the extent that these defenses are not based on the filing of IMCA's lawsuit as the inequitable or wrongful conduct.

In short, the *Noerr-Pennington* doctrine stands as no bar to the defendants' third and fourth affirmative defenses.

> b.    Are "misuse of copyright" and "unclean hands" defenses to copyright infringement actions?

The court finds that the next issue is the validity and scope of defenses of "misuse of copyright" and "unclean hands" as defenses to copyright infringement claims, because these are the defenses that the defendants' third and fourth affirmative defenses can reasonably be construed to assert. Part and parcel of that determination is whether the Eighth Circuit Court of Appeals has recognized either of these defenses as affirmative defenses to claims of copyright infringement.

> i.    The "misuse of copyright" defense. As the Third Circuit Court of Appeals recently noted, "There is . . . a well-established patent misuse doctrine, and . . . other courts of appeals have extended the doctrine to the copyright context." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 204 (3d Cir. 2003) (citing patent cases recognizing a misuse defense as including *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488 (1942); *W.L. Gore & Assocs., Inc. v. Carlisle Corp.*, 529 F.2d 614 (3d Cir. 1976)).[4] Drawing upon the doctrine as recognized in the patent context, "[t]he misuse

---

[4]Circuit Courts of Appeals that have expressly recognized the defense are the Ninth, *see Practice Mgmt. Information. Corp. v. American Med. Ass'n*, 121 F.3d 516, 5120 (9th Cir. 1997) (adopting the doctrine of copyright misuse as a "defense to copyright infringement"); *and compare Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) (although the Ninth Circuit Court of Appeals had recognized copyright misuse as a defense to a copyright infringement claim, the court declined to recognize it as an independent claim in the absence of allegations of copyright infringement), the Fifth, *see*

(continued…)

doctrine extends from the equitable principle that courts 'may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest.'" *Id.* (quoting *Morton Salt*, 314 U.S. at 492). To put it another way, "[t]he doctrine of misuse 'prevents copyright holders from leveraging their limited monopoly to allow them control of areas outside the monopoly.'" *Assessment Techs. of WI, L.L.C. v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2002) (quoting *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026-27 (9th Cir. 2001), and citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 792-95 (5th Cir. 1999); *Practice Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516, 520-21 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998); *DSC Communications Corp. v. DGI Technologies, Inc.*, 81 F.3d 597, 601-02 (5th Cir. 1996); *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 976-79 (4th Cir. 1990)).

---

[4] (...continued)

*Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) ("We recognized the copyright misuse defense in [*DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996)]."), the Fourth, *see Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 976 (4th Cir. 1990) ("We are of the view . . . that since copyright and patent law serve parallel public interests, a 'misuse' defense should apply to infringement actions brought to vindicate either right."), the Third, *see Video Pipeline, Inc.*, 342 F.3d at 206 (expressly "extend[ing] the patent misuse doctrine to copyright, and recogniz[ing] that it might operate beyond its traditional anti-competitive context," but ultimately holding that it was "inapplicable" in the case before the court, because the plaintiff's licensing agreements did not interfere significantly with copyright policy), the Second, *see Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 311 (2d Cir. 1966) (Lumbard, C.J., concurring, but writing for a majority of the judges) (recognizing an "unclean hands" doctrine where the copyright holder sought to use his copyright "to restrict the dissemination of information"), and the Federal, *see DSC Communications Corp. v. Pulse Communications, Inc.*, 170 F.3d 1354, 1368 (Fed. Cir. 1999) ("Copyright misuse is a defense to a claim of copyright infringement.").

The Circuit Courts of Appeals appear to be split between courts that have expressly recognized "misuse of copyright" as a defense to a copyright infringement claim and courts that have not yet recognized such a defense, but this court has not located a single Circuit Court of Appeals decision expressly rejecting such a defense *as a matter of law*. Courts that have thus far declined to recognize such a defense when it was presented have skirted the legal recognition question in either of two ways. First, several courts, including the Eighth Circuit Court of Appeals, have found that the purported "misuse of copyright" defense presented in a particular case failed on insufficiency of the supporting factual allegations, making it unnecessary to decide whether or not to recognize the defense as a matter of law. *See United Tel. Co. v. Missouri v. Johnson Publ'g Co., Inc.*, 855 F.2d 604, 612 (8th Cir. 1988) ("On the assumption that judicial authority teaches that the patent misuse doctrine may be applied or asserted as a defense to copyright infringement, the stipulated facts in this case do not support Johnson's contention that United Telephone 'misused' its copyright.");[5] *see also Telecom Tech. Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 831 (11th Cir. 2004) (concluding that the court need not consider whether such a defense should be recognized, because even if it exists, the plaintiff's actions did not violate intellectual property or antitrust law); *Dun & Bradstreet Software Servs., Inc. v.*

---

[5] Also, in *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991), the Eighth Circuit Court of Appeals concluded that a defendant's assertion of the equitable defense of misuse of copyright "may not be without merit," but left the matter under the "watchful eye of the district court." As IMCA asserts, this statement hardly constitutes express recognition of the defense, but just as clearly, neither does it constitute foreclosure of such a defense, such that striking the defense would be appropriate. *Dico, Inc.*, 266 F.3d at 879-80 (the district court properly struck a due process affirmative defense on the ground that it was foreclosed by a prior decision of the Eighth Circuit Court of Appeals and a subsequent decision of the United States Supreme Court had not undermined the appellate court's decision, as the defendant argued).

*Grace Consulting, Inc.*, 307 F.3d 197, 221 (3d Cir. 2002) ("This Court has not yet addressed the legal viability of the copyright misuse as a defense. We reserve consideration of this issue for another case. Even if we were to adopt copyright misuse as a defense as laid out in *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 972-77 (4th Cir. 1990), we agree with the District Court that the record is simply devoid of any evidence of misuse by [the plaintiff]."); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1170 (1st Cir. 1994) (finding that the case before it "does not require us to decide whether the federal copyright law permits a misuse defense," because there was insufficient evidence of the "misuse" alleged, a violation of the Sherman Act). Second, courts have held that the question of whether or not to recognize a "misuse of copyright" defense was not ripe, for example, because there was no viable claim of copyright infringement against which to raise such a defense. *See Garcia-Goyco v. Law Environmental Consultants, Inc.*, 428 F.3d 14, 21 (1st Cir. 2005) (noting that the court had not yet recognized "misuse of copyright" as a defense to a copyright infringement claim, but concluding that the court was not required to reach the "misuse" defense in that case, because the copyright claim was lacking in merit, where the claimant had surrendered ownership of the works at issue); *BellSouth Advert. & Pub. Corp. v. Donnelley Information. Pub.*, 999 F.2d 1436 (11th Cir. 1993) (*en banc*) (vacating and reversing a panel decision recognizing the defense, because there was no copyright infringement, and hence, no need to reach the question of whether to recognize a "misuse of copyright" defense); *see also Assessment Techs. of WI, L.L.C. v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (declining to rule on whether the court would recognize a misuse of patent defense on the ground that the court "need not run this hare to the ground" where no claims were presented raising the issue and the defendant was not a licensee of the plaintiff, so that the defendant "had no cause to drag the licenses before

us"). Thus, if anything, the decisions of the Circuit Courts of Appeals suggest that "misuse of copyright" is a generally recognized defense to a copyright infringement claim, when supported by sufficient allegations of "misuse."

Moreover, nothing in the decisions of the Eighth Circuit Court of Appeals declining to recognize a "misuse of copyright" defense, where only insufficient allegations of misuse were presented, suggests that the Eighth Circuit Court of Appeals would refuse to recognize the defense as a matter of law if supported by sufficient allegations; indeed, the Eighth Circuit Court of Appeals *assumed* that such a defense would be legally viable, if presented on sufficient facts. *See United Tel. Co.*, 855 F.2d at 612 ("On the assumption that judicial authority teaches that the patent misuse doctrine may be applied or asserted as a defense to copyright infringement. . . ."); *Hill*, 939 F.2d at 632 (a "misuse of copyright" defense may not have been "without merit," but leaving the matter to the district court). Clearly, it cannot be said that the Eighth Circuit Court of Appeals has foreclosed a defense of "misuse of copyright," such that striking the defense would be appropriate on that ground. *Compare Dico, Inc.*, 266 F.3d at 879-80 (the district court properly struck a due process affirmative defense on the ground that it was foreclosed by a prior decision of the Eighth Circuit Court of Appeals); *Winnebago Tribe of Nebraska*, 542 F.2d at 1007 (a defense was "clearly insufficient," and was properly stricken, where it was contrary to provisions of the Flood Control Act of 1944).

Thus, the court concludes that "misuse of copyright" is a viable defense to a copyright infringement action, at least in the abstract.

*ii. The "unclean hands" defense.* This court finds IMCA's contention that there is no "unclean hands defense" to a copyright infringement claim even less persuasive. While the Eighth Circuit Court of Appeals has only "assumed" that a "misuse of copyright" defense exists, but has found certain allegations insufficient to show restraint

of trade in support of such a defense, *see United Tel. Co.*, 855 F.2d at 612 ("On the assumption that judicial authority teaches that the patent misuse doctrine may be applied or asserted as a defense to copyright infringement, the stipulated facts in this case do not support Johnson's contention that United Telephone 'misused' its copyright."), the Eighth Circuit Court of Appeals has expressly recognized and found sufficient an "unclean hands" defense to a copyright infringement claim in *Saxon v. Blann*, 968 F.2d 676 (8th Cir. 1992).[6] In *Saxon*, the court explained, "The defense of unclean hands will bar enforcement of a valid copyright when a plaintiff commits wrongdoing 'of serious proportions.'" *Saxon*, 968 F.2d at 680 (quoting 3 MELVILLE B. NIMMER, COPYRIGHT, § 13.09[B] at 13-148-49 (1991)). The court then considered the merits of the defense in the case before it and upheld the district court's conclusion that "unclean hands" barred the plaintiff from enforcing his copyright. *Id.*[7] Where the Eighth Circuit Court of

---

[6]Neither of the parties cites the *Saxon* case, even though it is controlling authority in this Circuit.

[7]The Fifth Circuit Court of Appeals has discussed copyright misuse as an "unclean hands defense" which "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) (alterations in original, internal citations omitted); *accord Rosemont Enters., Inc.*, 366 F.2d at 303 (Lumbard, C.J., concurring, but writing for a majority of the judges) (also recognizing an "unclean hands" doctrine that should have barred a preliminary injunction against the alleged copyright infringer where the copyright holder sought to use his copyright "to restrict the dissemination of information"). As explained more fully *infra*, however, it appears that the Eighth Circuit Court of Appeals distinguishes between an "unclean hands" defense and a "misuse of copyright" defense, having expressly recognized and upheld an "unclean hands" defense based on inequitable conduct by the copyright holder toward the infringer, *see Saxon*, 968 F.2d at 680, but having thus far only assumed that a "misuse" defense exists, if based on adequately pleaded allegations of

(continued...)

Appeals has expressly recognized an "unclean hands" defense to a copyright infringement claim, nothing in Eighth Circuit law forecloses such a defense in a copyright infringement case as a matter of law, such that striking the defense would be appropriate. *Compare Dico, Inc.*, 266 F.3d at 879-80 (the district court properly struck a due process affirmative defense on the ground that it was foreclosed by a prior decision of the Eighth Circuit Court of Appeals); *Winnebago Tribe of Nebraska*, 542 F.2d at 1007 (a defense was "clearly insufficient," and was properly stricken, where it was contrary to provisions of the Flood Control Act of 1944). Thus, the court concludes that "unclean hands" is also a viable defense to a copyright infringement action, at least in the abstract.

### c. Has either defense been adequately pleaded?

Because the court cannot find that either a "misuse of copyright" defense or an "unclean hands" defense is foreclosed as a matter of law, the real question here is whether the defendants have adequately pleaded a "misuse of copyright" defense or an "unclean hands" defense. *Cf. United Tel. Co.*, 855 F.2d at 612 (assuming that a "misuse of copyright" defense is recognized, but finding the factual allegations in support of the "misuse" defense in that case to be insufficient); *Saxon*, 968 F.2d at 680 (finding certain wrongdoing sufficiently "serious" to support an "unclean hands" defense to copyright infringement). The court will consider, in turn, the sufficiency of the allegations in support of each defense.

### i. The "misuse" defense as pleaded.

IMCA contends that the defendants' defense of "misuse of copyright," as pleaded, must fail, because the defense is based only on allegations of antitrust violations and anti-competitive conduct, but IMCA contends that,

---

[7](...continued)
restraint of competition, or tying arrangements, or presumably other antitrust violations. *See United Tel. Co.*, 855 F.2d at 612.

as a matter of law, neither kind of allegation is sufficient to support such a defense.[8] Contrary to IMCA's contentions, where explicitly recognized, the "misuse" defense *does* encompass anti-competitive conduct and antitrust violations. *See, e.g., Video Pipeline, Inc.*, 342 F.3d at 204 ("Misuse often exists where the patent or copyright holder has engaged in some form of anti-competitive behavior.") (citing both patent and copyright cases). For example, the circumstance in which the Eighth Circuit Court of Appeals *assumed* that a "misuse" defense would be legally viable was where the defense was based on adequately pleaded allegations of restraint of competition or antitrust violations, such as tying arrangements. *See United Tel. Co.*, 855 F.2d at 612 (assuming such a defense would be viable if based on adequately pleaded allegations of restraint of competition or tying arrangements). Indeed, the question has more often been whether the defense includes *other* kinds of "misuse" besides antitrust violations and anti-competitive conduct. *Video Pipeline, Inc.*, 342 F.3d at 205 (noting that, although the focus of the "misuse of copyright" defense is most often anti-competitive behavior, "it is possible that a copyright

---

[8]IMCA has mischaracterized the defendants' affirmative defenses, which are based only *in part* on allegations of anti-competitive conduct and antitrust violations. *See* Answer, Third Affirmative Defense, ¶¶ 7-12 (alleging anti-competitive conduct and price-fixing); Fourth Affirmative Defense, ¶¶ 1-4 (alleging "misuse" or "unclean hands" by IMCA in attempting to use copyrights contrary to public policy to fix prices and restrain competition). For example, the defendants' third affirmative defense is *also* based on allegations that IMCA has "misused" its copyright by bringing this infringement action not for any proper purpose of protecting its copyrights, but to harass, oppress, and damage the defendants, and to coerce the defendants into selling their businesses to IMCA, and has thereby attempted to expand its copyrights far beyond the limited monopoly granted to a copyright holder. *Id.*, Third Affirmative Defense, ¶¶ 5-6. Thus, even if a "misuse" defense could not be based on allegations of anti-competitive conduct or antitrust violations, the "misuse" defense alleged here could survive on the basis of other kinds of allegations of inequitable or wrongful conduct.

holder could leverage its copyright to restrain the creative expression of another without engaging in anti-competitive behavior or implicating the fair use and idea/expression doctrines"); *cf. Lasercomb Am., Inc.*, 911 F.2d at 978 ("So while it is true that the attempted use of a copyright to violate antitrust law probably would give rise to a misuse of copyright defense, the converse is not necessarily true—a misuse need not be a violation of antitrust law in order to comprise an equitable defense to an infringement action."). Thus, the defendants' affirmative defenses are not insufficient just because they are premised, at least in part, on allegations of antitrust violations and anti-competitive conduct.

It is true that in *United Telephone Company*, the Eighth Circuit Court of Appeals found certain allegations of restraint of competition and tying to be insufficient to support a "misuse" defense. *United Telephone Co.*, 855 F.2d 612. In *United Telephone Company*, the defendant alleged that the plaintiff had "misused" its copyright by increasing its licensing fee for white pages telephone listings from 10 cents per entry before publication of its white pages in May 1985 to 49 cents per listing after publication of its white pages in May 1985. *Id.* In affirming summary judgment for the plaintiff on the defendant's "misuse" defense, the appellate court found that the defendant could not demonstrate an effort to restrain competition in area directories, where another competing directory company had purchased the listings at 10 cents per entry in 1985 and at 49 cents per entry in 1986, and the defendant had made no effort to negotiate with the plaintiff concerning the price of the customer list. *Id.* Similarly, the appellate court found that requiring the defendant to purchase a license in the plaintiff's entire white pages listings was not a "misuse that 'add[ed] to the monopoly of the copyright in violation of the principle of the patent cases involving tying clauses.'" *Id.* (quoting *United States v. Paramount Pictures*, 334 U.S. 131, 158 (1948)). Thus, under Eighth Circuit precedent,

the question is not whether a "misuse" defense can be based on anti-competitive conduct or antitrust violations, but whether such wrongdoing is adequately pleaded.

Turning to that question, while the Eighth Circuit Court of Appeals found in *United Telephone Company* that the *evidence* offered to show anti-competitive conduct or antitrust violations was insufficient to sustain a "misuse" defense, *see id.*, the *allegations* of anti-competitive conduct and antitrust violations here are *not* insufficient *on their face*. As pleaded, the allegations here are that IMCA has used its copyrights to attempt to eliminate competitors from the market, to engage in price-fixing, and to attempt to monopolize its share of the market for certain racing equipment. IMCA asks the court to look at the merits of these allegations, but at this point in the proceedings, on a motion to strike the defenses, the court cannot strike a defense that is "'sufficient as a matter of law or [that] fairly presents a question of law or fact which the court ought to hear.'" *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (quoting 2A MOORE'S FEDERAL PRACTICE ¶ 12.21 at 2437 (2d ed. 1975)). To the extent that the defendants' third and fourth affirmative defenses assert "misuse" of copyrights in the form of anti-competitive conduct and antitrust violations and other actions by IMCA to use its copyrights to harass or oppress the defendants, these defenses do, at a minimum, fairly present questions of law or fact that the court ought to hear, or at least, ought to reserve for consideration on a more complete record. *Id.*; *see also Stanbury*, 221 F.3d at 1063 (the district court has "liberal discretion" in whether or not to strike pleadings and "[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted ") (internal quotation marks and citations omitted).

IMCA next argues that, even if antitrust violations or anti-competitive conduct could form the basis for a "misuse" defense to a claim of copyright infringement, and even if "misuse" has otherwise been adequately pleaded, the defendants here have failed to allege

a necessary "nexus" between the antitrust violation or anti-competitive conduct and the controversy between the parties. Some federal district courts have required such a "nexus" to sustain a "misuse" defense. *See Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 430 (D.N.J. 2005) ("To state such a claim, the counterclaimant 'must establish a "nexus between ⋯ alleged anti-competitive actions and [the counterdefendant's] power over copyrighted material."'") (quoting *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 192 F. Supp. 2d 321, 345 (D.N.J. 2002)); *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) (requiring that the wrongful acts upon which the "misuse" defense is based must affect the equitable relations between the parties with respect to the controversy); *Microsoft Corp. v. Computer Support Services of Carolina, Inc.*, 123 F. Supp. 2d 945 (W.D.N.C. 2000) (requiring such a "nexus"); *but see Microsoft Corp. v. Fredenburg*, 2006 WL 752985, *1 (W.D. Pa. 2006) (slip op.) (rejecting such a "nexus" requirement, because "such a nexus is not required in this jurisdiction"). For example, in *Computer Support Services*, the district court stated, "A copyright abuse defense is a species of the equitable defense of unclean hands, which requires a defendant to show a nexus between the plaintiff's purported misconduct and the defendant's infringing acts." *Computer Support Servs., Inc.*, 123 F. Supp. 2d at 955.

However, contrary to IMCA's contentions, the only Circuit Court of Appeals that appears to have addressed something like a "nexus" requirement for a "misuse of copyright" defense premised on anti-competitive conduct or antitrust violations has stated that, "[t]o defend on misuse grounds, the alleged infringer need not be subject to the purported misuse." *Video Pipeline, Inc.*, 342 F.3d at 204; *see also Fredenburg*, 2006 WL 752985, *1 (also quoting the Circuit Court of Appeals opinion in *Video Pipeline* as the basis for its rejection of a "nexus" requirement). Certainly, when the Eighth Circuit Court of Appeals assumed in *United Telephone Company* that such a "misuse" defense exists,

but nevertheless rejected the specific "misuse" defense asserted in that case, the Eighth Circuit Court of Appeals did not suggest that the insufficiency of the defense in that case was failure to demonstrate such a "nexus." *See United Tel. Co.*, 855 F.2d at 612. Thus, nothing in Eighth Circuit law forecloses such a defense in a copyright infringement case as a matter of law, where no "nexus" is pleaded. *Compare Dico, Inc.*, 266 F.3d at 879-80 (the district court properly struck a due process affirmative defense on the ground that it was foreclosed by a prior decision of the Eighth Circuit Court of Appeals); *Winnebago Tribe of Nebraska*, 542 F.2d at 1007 (a defense was "clearly insufficient," and was properly stricken, where it was contrary to provisions of the Flood Control Act of 1944).

Moreover, even if such a "nexus" between the alleged "misuse" of the copyright and the dispute between the parties is required, the court finds that the defendants have adequately pleaded such a "nexus" in their third and fourth affirmative defenses. As explained above, those courts requiring a "nexus" for a "misuse" defense require a defendant "to show a nexus between the plaintiff's purported misconduct and the defendant's infringing acts." *Computer Support Servs., Inc.*, 123 F. Supp. 2d at 955. Here, the defendants have alleged, *inter alia*, that IMCA is improperly using its copyright not only to try to bar the defendants from publishing allegedly infringing rules, but also to bar the defendants from conducting racing events under similar rules and to restrain competition by the defendants. Such allegations are sufficient to plead the "nexus" between the plaintiff's "misuse" of its copyright and the infringement claims against the defendants, if such a "nexus" is required.

Finally, IMCA asserts that any "misuse" of the copyrights alleged in the defendants' affirmative defenses has been discontinued, making a "misuse" defense inapplicable. When the "misuse of copyright" defense applies, courts do not allow enforcement of the copyright for the period of misuse. *Practice Mgmt. Info. Corp.*, 121 F.3d at 520 & n.9;

*Lasercomb*, 911 F.2d at 979 n.22 (citing *United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 465 (1957)).  Thus, proof of misuse does not invalidate the copyright; rather, "[the plaintiff] is free to bring a suit for infringement once it has purged itself of the misuse." *Lasercomb Am., Inc.*, 911 F.2d at 979 n.22; *accord Alcatel USA, Inc.*, 166 F.3d at 793 n.81 (quoting *Lasercomb*).  Nevertheless, this principle does not allow IMCA to assert any and all claims of infringement, once the alleged misuse has ended.  Rather, this principle means that IMCA cannot assert an infringement claim, even after any "misuse" of copyright has ended, *for any period during which it was "misusing" its copyrights.  Cf. United States Gypsum Co.*, 352 U.S. at 495 (the plaintiffs could not recover for patent infringement during a three-year period if the plaintiff had been guilty of misuse of its patents during that time or if the original misuse at the beginning of that period remained unpurged).  Thus, even if some of the alleged "misuse" has been purged, which is an unresolved question of fact or an unresolved mixed question of law and fact, the purgation of the "misuse" would not necessarily bar the "misuse" defense in its entirety, and that being so, the alleged purgation of the alleged "misuse" is clearly no ground to strike the "misuse" defense.  To put it another way, such purgation of any "misuse" simply does not demonstrate that the defense is insufficient as a matter of law; rather, the timing and scope of purgation of any specific "misuses" fairly presents a question of law or fact which the court ought to hear.  *Lunsford*, 570 F.2d at 229.

Therefore, the court declines to exercise its discretion to strike the "misuse of copyright" defenses asserted by the defendants in this action.

*ii      The "unclean hands" defense as pleaded*.  As mentioned above, in *Saxon v. Blann*, 968 F.2d 676 (8th Cir. 1992), the Eighth Circuit Court of Appeals defined the "unclean hands" defense to a copyright infringement claim as "bar[ring] enforcement of a valid copyright when a plaintiff commits wrongdoing 'of serious proportions.'" *Saxon*,

968 F.2d at 680 (quoting 3 MELVILLE B. NIMMER, COPYRIGHT, § 13.09[B] at 13-148-49 (1991)). In addition, the court explained, "The defense does not apply 'where plaintiff's misconduct is not directly related to the merits of the controversy between the parties, but only where the wrongful acts' affect the equitable relations between the parties with respect to the controversy." *Id.* (quoting *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979), *cert. denied*, 445 U.S. 917 (1980)). Thus, while it is not clear whether a "nexus" between copyright "misuse" and the relationship of the parties is required to sustain a "misuse of copyright" defense, it *is* clear that the Eighth Circuit Court of Appeals requires a "nexus," that is, a "direct relationship," between the misconduct and the merits of the controversy between the parties, to sustain an "unclean hands" defense to a copyright infringement claim.

The questions here are whether the defendants have asserted wrongdoing of sufficiently "serious proportions," and whether that wrongdoing has the required "nexus" to the copyright infringement dispute between the parties. In *Saxon*, the plaintiff contended that it had not engaged in any wrongdoing that was sufficiently "serious." *Id.* However, the appellate court rejected that argument, as had the district court, where the plaintiff admitted at trial that, after he had transferred the publishing rights to his book to the defendant, he slightly revised the book and published it under a new title in order to take business away from the defendant. *Id.* The appellate court concluded that the conduct in question may have damaged the defendant's interests, and was directly related to the equities between the parties. *Id.* In this case, on a challenge to the pleading of defenses, the court finds that the defendants have adequately pleaded wrongdoing by IMCA that is both of sufficiently "serious proportions" and sufficiently related to the equities between the parties to permit the defense to go forward. *See id.* (requiring wrongdoing of "serious proportions" that is "directly related to the equities between the

34

parties" to sustain an "unclean hands" defense to copyright infringement). The defendants' third and fourth affirmative defenses are substantially based on misconduct by IMCA, specifically, using its copyright to attempt to damage the defendants' business, that could seriously affect the defendants' ability to conduct their business, and IMCA's conduct, as alleged, may exceed the scope of IMCA's legitimate copyright protection. *Id.* (requiring "serious" misconduct, which the court found had been shown where the plaintiff's conduct could have damaged the defendant's interests). Moreover, a substantial part of that conduct, at least as pleaded, is directly related to the equities between the parties. *Id.* Finally, the court finds that the "unclean hands" defense, as pleaded, fairly presents a question of law or fact which the court ought to hear. *Lunsford*, 570 F.2d at 229.

Therefore, the court declines, in its discretion, to strike the defendants' third and fourth affirmative defenses to the extent that those defenses allege that "unclean hands" should bar IMCA's copyright infringement claim.

### d. *Specific allegations*

IMCA also asserts that some of the paragraphs of the defendants' third and fourth affirmative defenses assert matters that have nothing to do with the copyright infringement claim that IMCA is asserting, but instead draw in other issues, such as trademark infringement, that IMCA is not asserting. The court has reviewed all of the challenged paragraphs of the defendants' third and fourth affirmative defenses and concludes that, even if not "strictly relevant" to IMCA's copyright infringement claims, the allegations therein provide "important context and background" to claims asserted or are relevant to some object of the plaintiff's suit or the defendants' counterclaims. *Stanbury*, 221 F.3d at 1063 (ruling that even matters that are not "strictly relevant" to the principal claim at issue should not necessarily be stricken, if they provide "important context and

background" to claims asserted or are relevant to some object of the pleader's suit). Therefore, the court declines to strike any part of the defendants' third and fourth affirmative defenses at this point in the proceedings. Rather, those defenses are better addressed on a more complete record. *Lunsford*, 570 F.2d at 229 (the court is within its discretion to decline to strike pleadings that fairly present a question of law or fact which the court ought to hear).

## C. *IMCA's Motion To Dismiss Counterclaims*

In addition to its challenges to the defendants' third and fourth affirmative defenses, IMCA seeks dismissal of the defendants' Counterclaims for abuse of process pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. As explained above, the defendants have asserted two nearly identical Counterclaims, one by Staley and one by USMTS, Inc., each alleging that IMCA has engaged in "abuse of process." The portions of their Counterclaims specifically identified as "Counts" allege that, on or about December 30, 2005, the date that IMCA filed this lawsuit, IMCA "intentionally used the federal court process to oppress, harass, and cause an undue burden of expense on the Counterclaim Plaintiff" in question. Defendants' Answer, Counterclaim of Todd Staley, ¶ 34 & Counterclaim of USMTS, Inc., ¶ 34. The counterclaimants assert, further, that IMCA has used the legal process primarily to eliminate or harm its business competitor, USMTS, Inc., and not to obtain temporary or permanent injunctive relief or monetary damages and that, as a result, the counterclaimants have suffered damages, including emotional distress to Staley, and unnecessary attorney fees and lost time for both counterclaimants from defending against IMCA's lawsuit. *Id.* at ¶¶ 35-36. As relief, the counterclaimants pray for actual and punitive damages, as well as costs of their action.

The court's review of IMCA's motion to dismiss these Counterclaims begins with a summary of the parties' arguments.

### 1. *Arguments of the parties*

IMCA's first challenge to the defendants' Counterclaims pursuant to Rule 12(b)(6) is technical: IMCA asserts that the defendants have failed to incorporate any factual allegations in support of their Counterclaims, so that the Counterclaims plainly fail to state claims upon which relief can be granted. Turning to the merits of the Counterclaims, IMCA contends that the *Noerr-Pennington* doctrine bars the Counterclaims for "abuse of process." IMCA argues that the defendants are attempting to circumvent the *Noerr-Pennington* doctrine by asserting antitrust violations in the unincorporated general allegations, which the *Noerr-Pennington* doctrine plainly would bar, but identifying their Counterclaims as "abuse of process." IMCA asserts that the defendants have not alleged that IMCA's copyright infringement action is a "sham," and cannot succeed on such a contention, because there is clearly probable cause for IMCA's copyright infringement claims. Similarly, IMCA contends that the pleading of the "abuse of process" claim is insufficient on its face, because the required element of use of legal process for an improper purpose cannot be shown. IMCA points out that even its alleged bad intentions are irrelevant to the applicability of the *Noerr-Pennington* doctrine or to the success of an abuse of process claim, if there is probable cause for IMCA's underlying suit.

In response, the defendants argue that IMCA is relying on assertions of fact outside of the pleadings to support IMCA's contention that the defendants' Counterclaims for abuse of process are without merit, but that the question on a Rule 12(b)(6) motion to dismiss is whether the Counterclaims are adequate on the face of the pleadings. The defendants assert that, while they may not have specifically incorporated the thirty-three paragraphs of factual allegations into the portion of their Counterclaims specifically

alleging abuse of process, the purpose of those factual allegations and the relationship of those factual allegations to their Counterclaims are obvious. Next, while the defendants acknowledge that they did not use the word "sham" to describe IMCA's copyright infringement claims in the pleading of their own Counterclaims, they have alleged that IMCA's copyright infringement claims are baseless and that IMCA's infringement suit is being pursued for improper purposes. Thus, they contend that the *Noerr-Pennington* doctrine does not stand as a bar to their Counterclaims, because they have adequately alleged an exception to that doctrine for "sham" litigation by the plaintiff. They also point out that IMCA's claims of copyright infringement are objectively baseless to the extent that IMCA seeks to recover for alleged infringement that occurred more than three years prior to the filing of its suit, because such recovery is barred by the applicable statute of limitations. They contend that IMCA's other allegations of copyright infringement generate sufficient questions of fact that the court cannot decide, as a matter of law, based only on the pleadings, that IMCA's infringement suit is not a "sham," and if any one of IMCA's allegations is shown to be baseless, the defendants can legitimately pursue their "abuse of process" Counterclaims as to such a "sham" allegation. Indeed, the defendants point out that IMCA has not even adequately pleaded that it owns the copyrights in question, because no copyright certifications are attached to IMCA's Complaint. The defendants also assert that their Counterclaims are not based on antitrust allegations or allegations of unfair competition in violation of state or federal law; rather, they contend that their Counterclaims, as pleaded, are for "abuse of process."

In reply, IMCA contends that the defendants have conceded that allegations of antitrust violations are not related to their state-law Counterclaims of "abuse of process," but the defendants have nevertheless pleaded "price-fixing" as a violation of antitrust laws and Iowa unfair competition laws in the general allegations that apparently are intended to

support their Counterclaims. Thus, IMCA contends that it is obvious that the defendants are attempting to circumvent IMCA's *Noerr-Pennington* immunity to claims for antitrust violations or unfair competition. IMCA reiterates that the defendants must expressly allege that IMCA's suit is a "sham" to escape the *Noerr-Pennington* bar, but that they have not done so. Finally, IMCA reiterates that its copyright infringement claim is not "objectively baseless" as a matter of law, so that the defendants cannot succeed on their "abuse of process" claim.

### 2. Applicable standards

The issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party, here the defendants, are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir. 1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821 (1998); *Doe v. Norwest Bank Minn., N.A.*,

107 F.3d 1297, 1303-04 (8th Cir. 1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir. 1996) (same).[9]

As explained above, in the portion of this ruling addressing the defendants' motions to strike parts of IMCA's motion to dismiss and IMCA's reply brief, on a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. *See* FED. R. CIV. P. 12(b)(6); *see also Buck*, 75 F.3d at 1288 & n. 3. As also explained above, however, the court will not consider matters outside of the pleadings in its disposition of IMCA's motions to dismiss the defendants' Counterclaims. *See Skyberg*, 5 F.3d at 302 n.2 ("[W]here the district court's order makes clear that the judge ruled only on the motion to dismiss," the appellate court will "treat the case as being in that posture.").

Moreover, the court is mindful that, in treating the factual allegations of a complaint (or counterclaim) as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver*, 105 F.3d at 397 (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595-97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (the court "need not

---

[9]Presumably, where the question of whether or not IMCA has asserted "sham" claims of copyright infringement also arises in the context of IMCA's motion to dismiss the defendants' Counterclaims, the court must likewise take IMCA's allegations as true.

accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the defendants' Counterclaims, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *accord Conley,* 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a claimant's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to

dismiss should be granted as a practical matter only in the unusual case in which a [claimant] includes allegations that show on the face of the [pleading] that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

The court will apply these standards to IMCA's motion to dismiss the defendants' Counterclaims.

### 1. Application of the standards

#### a. Abuse of process under Iowa law

The Iowa Supreme Court has explained that "[a]buse of process is 'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001) (quoting *Fuller v. Local Union No. 106 of United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421 (Iowa 1997)). Thus, "[t]he essence of this tort is an improper purpose for using the legal process." *Fuller*, 567 N.W.2d at 421. There are three elements to an abuse-of-process claim under Iowa law: (1) the use of a legal process; (2) its use in an improper or unauthorized manner; and (3) resulting damages. *Gibson*, 621 N.W.2d at 398; *Thomas v. Marion County*, 652 N.W.2d 183, 186 (Iowa 2002); *Fuller*, 567 N.W.2d at 421-22; *Palmer v. Tandem Mgmt. Servs.*, 505 N.W.2d 813, 817 (Iowa 1993). A claim for abuse of process can be asserted even before the underlying, allegedly abusive proceeding is concluded, because the wrongful act upon which the claim is based is the commencement of the allegedly abusive action. *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 400 (Iowa 1998).

The Iowa Supreme Court has explained that "'[t]he first element [of an abuse-of-process claim, use of legal process,] can generally be shown by the use of a legal process

against the plaintiff.'" *Gibson*, 621 N.W.2d at 398 (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990)). The "legal process" in question can be civil or criminal. *Fuller*, 567 N.W.2d at 421 (citing *Palmer*, 505 N.W.2d at 817). Although the Iowa Supreme Court has "not precisely identified what action constitutes 'legal process' sufficient to satisfy the first element," *see id.* at 422, it appears reasonably clear that actually filing a civil lawsuit against the claimant would constitute the required "use of legal process" against the claimant. *Cf. id.* (concluding that filing a police report was insufficient, but suggesting that actually filing a criminal complaint would be sufficient).

As to the second element, "'[t]he plaintiff must prove that the defendant used the legal process *primarily* for an impermissible or illegal motive.'" *Gibson*, 621 N.W.2d at 398 (quoting *Wilson*, 464 N.W.2d at 266, with emphasis in the original). Abuse-of-process claims under Iowa law often fail on the merits, because of the high burden imposed by the Iowa Supreme Court for this second element. *Fuller*, 567 N.W.2d at 422; *accord Thomas*, 652 N.W.2d at 186 (citing *Fuller*). At this stage of the proceedings, however, the question is whether the defendants have adequately pleaded their abuse-of-process Counterclaims. Thus, IMCA must show that "no relief could be granted [on the defendants' Counterclaims] under any set of facts that could be proved consistent with the allegations." *Handeen*, 112 F.3d at 1347 (internal quotation marks and citations omitted). The court finds that IMCA cannot make that showing.

As the Iowa Supreme Court has explained,

> Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself. [*Palmer*, 505 N.W.2d at 817]. This amounts to "a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.* (citing *Schmidt v. Wilkinson*, 340 N.W.2d 282, 284-85 (Iowa 1983)).

*Fuller*, 567 N.W.2d at 421. To put it another way, proof of an ulterior motive for the plaintiff's suit, standing alone, is not enough. *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986); *accord Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 209 (Iowa 1995); *Palmer*, 505 N.W.2d at 817. Rather, "[a] prerequisite for recovery is evidence that the person committed some act in the use of process that was not proper in the regular prosecution of the proceeding." *Id.* at 664. Therefore, a party sued for abuse of process "is not liable if he [or she] has done no more than carry the process to its authorized conclusion, even with bad intentions." *Wilson*, 464 N.W.2d at 267; *accord Johnson*, 533 N.W.2d at 209 (quoting *Wilson*). Still more specifically,

> Abuse of process will not lie for a civil action that inconveniences a defendant or for one filed in expectation of settlement. [*Wilson*, 464 N.W.2d at 267.] Additionally, there is no abuse of process when the action is filed to intimidate and embarrass a defendant knowing there is no entitlement to recover the full amount of damages sought.

*Palmer*, 505 N.W.2d at 817. On the other hand, "[a]n abuse of process can occur even though there is probable cause to bring the action and the original action terminates in favor of the plaintiff," if the *primary* purpose of the action is nevertheless improper. *Palmer*, 505 N.W.2d at 817 (citing *Wilson*, 464 N.W.2d at 266).

To explain what is meant by "*primarily* to accomplish a purpose for which [the process] is not designed," the Iowa Supreme Court has adopted Comment *b* to section 682 of the RESTATEMENT (SECOND) OF TORTS, which states the following:

> "*Primarily.*" The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process

> merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of justified bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.
>
> For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

*Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 429-30 (Iowa 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 682, cmt. *b*). The Iowa Supreme Court affirmed a jury verdict of abuse of process, where the defendant had told witnesses that it was going to "nickel and dime [the plaintiff] to death" and "bleed" the plaintiff by filing litigation against the plaintiff, and there was evidence that the defendant stood to benefit from media coverage of the litigation involving its competitor, despite the defendant's contention that harming the plaintiff was not the defendant's "primary" purpose. *Id.* at 430.

### b. Sufficiency of the defendants' pleadings

The first element of an abuse-of-process claim is the use of a legal process against the claimant. *Gibson*, 621 N.W.2d at 398. Here, the defendants have adequately pleaded in their Counterclaims that, on December 30, 2005, IMCA initiated a civil action for copyright infringement against the defendants, and that very suit is now before the court. Thus, the first element of the defendants' counterclaim is adequately pleaded. *Cf. Fuller*, 567 N.W.2d at 422 (concluding that filing a police report was insufficient to satisfy the

first element of an abuse-of-process claim, but suggesting that actually filing a criminal complaint would be sufficient). [10]

The court finds that the defendants have also adequately *pleaded* the second element of their abuse-of-process Counterclaim, use of process in an improper or unauthorized manner, *Gibson*, 621 N.W.2d at 398, by pleading, *inter alia*, that IMCA initiated this copyright infringement action not for any proper purpose of stopping and recovering for copyright infringement, but "to oppress, harass, and cause an undue burden of expense on" the defendants, Answer, Counterclaim, ¶ 34, and that the legal process was used "primarily to eliminate or harm its business competitor, USMTS," *id.* at ¶ 35. These allegations do more than simply allege that IMCA had an "ulterior motive" for its suit, *see Grell*, 389 N.W.2d at 663 (an "ulterior motive" for the underlying legal process is not enough); they allege that the "*primary* purpose" was to extort a business advantage from the defendants or to harm their business. *See Fuller*, 567 N.W.2d at 421. The defendants have alleged more than an incidental motive of spite, because they have alleged that the process is being used for the immediate purpose of harming competitors, which is not what a copyright infringement action is designed for. *Cf. Pundzak, Inc.*, 500 N.W.2d at 429-30 (upholding jury verdict for abuse-of-process based on evidence that the defendant intended to "nickel and dime" and "bleed" the claimant by filing litigation and stood to benefit from

---

[10]As an aside, the court notes that it is clear that the defendants intended the thirty-three paragraphs of factual allegations in their Counterclaims, with subheadings for "jurisdiction and venue," "parties," and "general fact allegations," to provide the factual basis for their counterclaims. *See* Defendants' Answer, Counterclaim of Todd Staley, ¶¶ 1-33 & Counterclaim of USMTS, Inc., ¶¶ 1-33. The fact that another internal subheading, "COUNT 1 (ABUSE OF PROCESS)," was interpolated before the allegations of the specific counterclaim and relief sought did not obscure or confuse the purpose of the preceding factual allegations as allegations intended to support the claim.

media coverage of the litigation, thus harming a competitor). Moreover, looking to other factual allegations in support of the defendants' Counterclaim, the defendants have alleged that the present action is being used as a form of extortion to put pressure on them to compel them to cease pursuing their legitimate business as competing sponsors of racing events, or to sell their business to IMCA, not just to stop them from using copyrighted material belonging to IMCA. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 682, cmt. *b*, which defines the "usual case" of abuse of process as "one of some form of extortions, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it"). Finally, the Iowa Supreme Court has already rejected IMCA's contention that an abuse-of-process claim will not lie, simply because there is probable cause to support IMCA's copyright infringement claims. *See Palmer*, 505 N.W.2d at 817 (citing *Wilson*, 464 N.W.2d at 266, in support of the rule that "[a]n abuse of process can occur even though there is probable cause to bring the action and the original action terminates in favor of the plaintiff").

In short, the court finds that the defendants have adequately pleaded the elements of their abuse-of-process Counterclaims. Again, the issue on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is not whether a claimant will ultimately prevail, but whether the claimant is entitled to offer evidence in support of his, her, or its claims. *Scheuer*, 416 U.S. at 236. In the absence of some other insuperable bar, the allegations here are sufficient to allow the defendants to offer evidence in support of their Counterclaims.

     *c.*    *Does the* Noerr-Pennington *doctrine stand as an insuperable bar?*

Although the court finds that the defendants have adequately pleaded the elements of their abuse-of-process Counterclaims, IMCA nevertheless contends that there is an "insuperable bar" to such claims in the form of the *Noerr-Pennington* doctrine. *See Frey*,

44 F.3d at 671("A motion to dismiss should be granted as a practical matter only in the unusual case in which a [claimant] includes allegations that show on the face of the [pleading] that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted). IMCA contends that the *Noerr-Pennington* doctrine stands as an "insuperable bar" to the Counterclaims in this case, because the defendants have failed to allege that IMCA's lawsuit is a "sham," the defendants have failed to allege any "improper purpose," and the defendants are merely attempting to assert an insufficient abuse-of-process Counterclaim as a "back door" way to assert an antitrust claim that is clearly barred by the *Noerr-Pennington* doctrine.

The court explained above, beginning on page 19, the basic principles of the *Noerr-Pennington* doctrine. For present purposes, suffice it to reiterate that the *Noerr-Pennington* doctrine provides immunity from tort liability for the act of filing a lawsuit, based on the First Amendment rights to free speech and to petition the courts. *See, e.g., Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 (8th Cir. 1999) (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965)). Thus, the doctrine "protects a defendant from liability but not from suit," and the Eighth Circuit Court of Appeals has "never characterized it as immunity from standing trial." *Hinshaw v. Smith*, 436 F.3d 997, 1003 (8th Cir. 2006) (noting that this interpretation of the doctrine is in accord with the view of the "sister circuits"); *Porous Media Corp.*, 186 F.3d at 1080 n.4 (("[T]he First Amendment generally immunizes the act of filing a lawsuit from tort liability under the *Noerr-Pennington* doctrine.").

What is of primary interest here is that there is a "sham" lawsuit exception to the *Noerr-Pennington* doctrine. As the Eighth Circuit Court of Appeals has explained,

Only "sham" lawsuits fall outside the *Noerr-Pennington* cloak of immunity, that is, "only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process····" *Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985). A lawsuit is a "sham" if it is both (i) objectively baseless in that no reasonable litigant could expect success on the merits and (ii) subjectively motivated by bad faith. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61-62, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993).

*Porous Media Corp.*, 186 F.3d at 1080 n.4. IMCA contends that the defendants have not pleaded that IMCA's copyright infringement claim is a "sham" and that, as a matter of law, its copyright infringement suit is not objectively "baseless," where it claims it had probable cause to believe that the defendants were infringing its copyrights, as set forth in its Complaint. The defendants contend that IMCA's copyright infringement action is objectively "baseless" to the extent that it seeks recovery for infringement that falls outside of the statute of limitations period for such a claim, to the extent that it asserts copyrights in uncopyrightable rules of a competition, and to the extent that it asserts copying of IMCA's rules by the defendants or that any racer would confuse IMCA's rules with the defendants' rules. The defendants also contend that, at a minimum, whether or not IMCA's claim is "baseless" is a question of fact for a jury to decide.

The court finds no "insuperable bar" to the defendants' Counterclaims arising from their failure to plead, in so many words, that IMCA's lawsuit is a "sham," such that *Noerr-Pennington* immunity would not apply. Rather, in the court's view, the question is whether it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Handeen*, 112 F.3d at 1347 (internal quotation

marks and citations omitted). The court finds that the defendants have pleaded that "I.M.C.A. has no factual basis to form a reasonable belief that the rules now being used by U.S.M.T.S. or U.S.R. are copies of the rules by I.M.C.A. or that any reasonable racer would ever confuse those rules." Defendants' Answer, Counterclaim ¶ 30. Moreover, the defendants have made numerous allegations that IMCA's lawsuit is subjectively motivated by bad faith. Thus, the defendants have pleaded the requirements for an exception to *Noerr-Pennington* immunity. *See Porous Media Corp.*, 186 F.3d at 1080 n.4 (a lawsuit is a "sham," such that *Noerr-Pennington* immunity does not apply, if it is "objectively baseless" and "subjectively motivated by bad faith").

Moreover, while IMCA contends that it has pleaded the factual basis establishing probable cause for its copyright infringement claim, the court finds that the pleadings only demonstrate that there is a genuine factual dispute regarding the legitimacy of IMCA's copyright infringement action, such that the court should not decide the viability of either *Noerr-Pennington* immunity or an exception to such immunity on the basis of just the pleadings. *But see Razorback Ready Mix Concrete Co., Inc., v. Weaver*, 761 F.2d 484, 487 (8th Cir. 1985) (rejecting a party's contention that whether or not the "sham" lawsuit exception to *Noerr-Pennington* immunity applied was a fact question, and instead finding, as a matter of law, that the filing of a single lawsuit could not constitute an antitrust violation, the wrongful conduct in question, in the absence of allegations of serious misconduct barring access to the courts). This course is appropriate not least because the *Noerr-Pennington* doctrine "protects a defendant from liability but not from suit," and the Eighth Circuit Court of Appeals has "never characterized it as immunity from standing trial." *Hinshaw*, 436 F.3d at 1003. Thus, while the *Noerr-Pennington* doctrine may well, ultimately, provide IMCA with immunity from liability on the defendants' abuse-of-process Counterclaims, on a fully developed record, it does not provide IMCA with

immunity from assertion of the defendants' abuse-of-process Counterclaims at this point in the proceedings.

IMCA's motion to dismiss the defendants' Counterclaims will be denied.

### III.  CONCLUSION

Upon the foregoing,

1.     The defendants' April 27, 2006, Motion To Strike Improper References In Plaintiff's Motions (docket no. 10) and May 9, 2006, Motion To Strike Improper References In Plaintiff's Reply Brief (docket no. 13) are granted to the extent that the court has not considered matters outside of the pleadings in its disposition of IMCA's motions to dismiss or strike, but otherwise denied.

2.     The plaintiff's May 27, 2006, Motion To Strike Or Deny Defendants' Improper Surrebuttal Or Surreply (docket no. 16) is denied.

3.     The plaintiff's April 15, 2006, Motion To Dismiss And Motion To Strike (docket no. 9), seeking an order striking the defendants' third and fourth affirmative defenses and dismissing the defendants' counterclaims, is denied in its entirety.

IT IS SO ORDERED.

DATED this 19th day of June, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA